IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TONY NENNINGER                                              PLAINTIFF

              v.            Civil No. 07-3028

UNITED STATES FOREST
SERVICE, ET AL.                                            DEFENDANTS

## O R D E R

NOW on this 3rd day of July 2008, comes on for consideration Defendant's **Motion to Dismiss or, in the Alternative, for Summary Judgment** (document #40), Plaintiff's response thereto (document #43) and the Court, being well and sufficiently advised, finds and orders as follows:

### Background

1. On June 25, 2007, Plaintiff Tony Nenninger ("Plaintiff") commenced this lawsuit against Defendants the United States Forest Service (the "Forest Service"); United States Department of Agriculture ("USDA"); Mark Rey, in his official capacity as Under Secretary of the USDA; Ellen Horstein, in her personal and official capacity as Forest Service legal counsel; John Twiss, in his personal and official capacity as Director of the Forest Service's Law Enforcement and Investigations Staff; Chris Lampshire, in his personal and official capacity as a Forest Service Law Enforcement Officer; Chad Krogstad, in his personal and official capacity as a Forest Service Law Enforcement Officer; and other unknown agents of

-1-

the Forest Service and government agencies (collectively the
"Defendants").

The case at bar stems from Plaintiff's membership in a group
known as the Rainbow Family.  Rainbow Family members have been
described thus:

> The Rainbow Family is an unincorporated, loosely-
> structured group of individuals that regularly gathers in
> undeveloped sites in National Forests to pray for peace,
> discuss environmental and other contemporary political and
> social issues, and exchange, develop, express, and
> demonstrate their ideas and views. Annual gatherings have
> occurred in different National Forests on and around July
> 4th since 1972.  These gatherings draw more than 20,000
> participants and last for a month or more.  Smaller
> regional gatherings take place throughout the year in
> National Forests across the country.

Black v. Arthur, 18 F. Supp. 2d 1127, 1130 (D. Or. 1998) (citations
and internal quotation marks omitted), aff'd, 2001 F.3d 1120 (9th
Cir. 2000).

Historically, the Forest Service has encountered difficulties
in handling the use of National Forest System lands by large
groups, such as the annual Rainbow Family gatherings.  As one might
imagine with groups of some 20,000 people, "[i]mproperly closed
latrines, eroded and compacted soil, destruction of vegetation, and
litter have been problems at previous gatherings." Black, 18
F.Supp. 2d at 1130.

To address the various problems arising from large
noncommercial gatherings on National Forest System lands, the
Forest Service promulgated regulations, codified at 36 C.F.R. Part

-2-

251, Subparts B and C, and 36 C.F.R. Part 261, Subpart A, which require those wishing to use or occupy National Forest System lands in noncommercial groups of 75 or more to obtain a "special use" authorization or permit to do so. Persons wishing to obtain such a permit must provide minimal information in a short application form. See 36 C.F.R. §§ 251.54(d)(1) and (d)(2)(I). One of the pieces of information the applicant must provide is "the name of the person or persons 21 years of age or older who will sign the special use authorization on behalf of the proponent." 36 C.F.R. § 251.54(d)(2)(i)(E). The regulation directs potential applicants "to contact the Forest Service ... as early as possible in advance of the proposed use" and requires applicants to apply at least 72 hours before the proposed event begins. See 36 C.F.R. § 251.54(g)(2)(iv). A permit issues automatically 48 hours after delivery unless the Forest Service denies it in writing, giving reasons for the denial. See 36 C.F.R. § 251.54(g)(3)(I). The Forest Service may reject an application only if it fails to meet one of eight narrow, content-neutral criteria. See 36 C.F.R. § 251.54(g)(3)(ii).

These Forest Service regulations and permit requirements form the basis of Plaintiff's various claims against Defendants – which can be summarized as follows:

* Count I of the complaint challenges the constitutionality of the Forest Service's requirement that those wishing to use or

occupy National Forest Service lands, in noncommercial groups of 75 or more, obtain a special use permit to do so (hereinafter the "permit requirement"). And, more specifically, Plaintiff challenges the requirement that a member, or designated agent, of the non-commercial group sign for the permit (hereinafter the "agent requirement"). Plaintiff alleges that these requirements violate his First Amendment rights to freedom of speech and freedom of religion; his Fifth Amendment rights to due process and equal protection; the Religious Freedom Restoration Act (the "RFRA"), 42 U.S.C. § 2000bb et seq.; and civil rights laws codified at 42 U.S.C. §§ 1985, 1986, and 1988. Count I further alleges that the individually named Defendants violated the aforementioned rights in implementing and enforcing Forest Service regulations.

* Count II of the complaint asserts that certain law enforcement actions taken by the individually named Defendants, acting in both their personal and official capacities, violated Plaintiff's First, Fourth, and Fifth Amendment rights and constituted selective enforcement, malicious prosecution, false arrest, assault, invasion of privacy, fraud under duress, and libel. Particularly, Plaintiff challenges the legality of the vehicle checkpoints used by Forest Service officials during Rainbow Family gatherings.

* Count III of the complaint recasts Counts I and II as a conspiracy among Forest Service officials, based on the same legal

-4-

standards.

* Finally, Plaintiff seeks a permanent injunction: (1) requiring Defendant to use the least restrictive equally effective alternative to the agent requirement; (2) restraining Defendants from taking any action to coerce Plaintiff or other participants in Rainbow Family gatherings into acting as agents for other participants; (3) mandating that Defendants take steps to assure that noone interferes with free and unobstructed access to future Rainbow Family gatherings; and (4) prohibiting Defendants from making any vehicle stops and/or searches without exigent circumstances.

## Discussion

2.   Due to the complexity and number of claims raised in Plaintiff's complaint, Defendants' motion is similarly lengthy and sets forth numerous arguments for dismissal and/or summary judgment.  In sum, Defendants' arguments are as follows:

* Plaintiff's claims against the Forest Service and the other Defendants, in their official capacities, should be dismissed for failure to state a claim for which relief can be granted;

* Plaintiff's First Amendment claim is barred by the law of the Circuit and collateral estoppel;

* Plaintiff cannot show that he has a cause of action under the RFRA because the agent requirement does not substantially burden his exercise of religious beliefs;

* Plaintiff lacks standing to seek equitable relief with respect to the certain law enforcement activities conducted at the 2006 and 2007 national Rainbow Family gatherings, and these law enforcement activities were constitutional;

* Plaintiff has no cause of action under 42 U.S.C. §§ 1985, 1986, and 1988;

* Plaintiff's state law claims against the Forest Service and the other Defendants, in their official capacities, are barred by sovereign immunity and Plaintiff's failure to exhaust administrative remedies; and

* Plaintiff's claims brought against Defendants Twiss, Hornstein, Lampshire, and Krogstad, in their personal capacities, should be dismissed as they are entitled to qualified immunity and the United States is the proper party with respect to any claims arising under state law.

3. Plaintiff has responded in opposition to each of Defendants' arguments for dismissal and/or summary judgment. Moreover, Plaintiff's response requests that the Court stay its ruling on the pending motion to allow for further discovery in this case. As the issues before the Court have been fully briefed by both parties, and Plaintiff has even offered extensive supplementation to his response – which the Court has duly reviewed – the Court finds that Defendants' motion is ripe for consideration and this matter should not be stayed.

4. The Court will first consider the merits of Defendants'
arguments for dismissal.  A motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6) is governed by very stringent
rules of review:

> A complaint should not be dismissed for failure to state
> a claim unless it appears beyond doubt that the plaintiff
> can prove no set of facts in support of his claim which
> would entitle him to relief.  A complaint must be viewed
> in the light most favorable to the plaintiff and should
> not be dismissed merely because the court doubts that a
> plaintiff will be able to prove all of the necessary
> factual allegations.

Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 905 (8th
Cir. 2000) (internal citations and quotation marks omitted).

5. Proceeding under this standard of review, the Court will
now address the various claims raised in Count I of the complaint:

(a) *First Amendment Claims* -- As previously stated, Plaintiff
contends that the Forest Service regulations, and particularly the
agent requirement, violate his First Amendment rights to freedom of
speech and freedom of religion.  Specifically, Plaintiff claims
that the agent requirement is facially overly-broad, vague, and/or
content-based.

In their motion to dismiss, Defendants argue that the law of
the Eighth Circuit and collateral estoppel bar this constitutional
claim.  Defendants say that Plaintiff unsuccessfully challenged the
constitutionality of the permit and agent requirements under the
First Amendment in a previous case.  Specifically, Defendants point
out that Plaintiff was previously tried and convicted of failing to

-7-

obtain the required permit, and was fined $50.00. <u>See generally</u> <u>United States v. Nenninger</u>, 71 F.Supp. 2d 962 (W.D. Mo. 1999).  On appeal, Plaintiff challenged, and the Eighth Circuit affirmed, the constitutionality of the Forest Service's permit and agent requirements. <u>See generally</u> <u>United States v. Nenninger</u>, 351 F.3d 340 (8th Cir. 2003).

In response, Plaintiff argues that the issues raised in Count I of the complaint are not foreclosed, as they are unique and unlike the First Amendment issues raised in previous litigation.

In <u>United States v. Nenninger</u>, Plaintiff argued that the regulation governing the issuance of the special-use authorization is overly broad and facially invalid because it allows the issuing Forest Service office to attach "[s]uch terms and conditions as the authorized officer deems necessary to ... *otherwise protect the public interest*." 36 C.F.R. § 251.56(a)(2)(vii) (emphasis added). The Eighth Circuit rejected Plaintiff's argument in light of the consistent interpretation that the Forest Service has given its noncommercial group use permit requirements. <u>Id</u>. at 345.  In so doing, the Court of Appeals agreed with the Forest Service that the intent of the rule is not to break up or prohibit any group uses, including Rainbow Family Gatherings.  "Rather, the intent of this rule is to control or prevent harm to forest resources, address concerns of public health and safety, and allocate space." <u>Id</u>.

In <u>Nenninger</u>, Plaintiff further argued that the regulations

-8-

requiring that noncommercial groups obtain and sign a special-use application are not valid time, place, and manner regulations. The Eighth Circuit did not agree. Specifically, the Court of Appeals held that because the restrictions at issue are content-neutral and have been uniformly applied, they are valid restrictions. The Court further stated that,

> the regulations leave ample alternative channels for expressive activity. If the Rainbow Family wishes to avoid the special-use authorization requirement, they may hold their gatherings on private property or other lands. If they wish to gather en masse in the National Forests, they must obtain a special-use authorization.

Id. at 346.

Thus, the law of the Eighth Circuit is clear – the Forest Service regulations at issue are not unconstitutionally overly broad or vague. Moreover, the regulations requiring that noncommercial groups obtain and sign a special-use application are valid time, place, and manner restrictions – as they are content-neutral and "narrowly tailored to serve a significant governmental interest, and ... leave[s] open ample alternative channels for communication." Id. at 345 (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

Considering the foregoing, the Court finds that the law of this Circuit addresses and disposes of a portion of the First Amendment challenges brought by Plaintiff. Count I of the complaint clearly argues that the Forest Service regulations at issue are overly broad and content-based restrictions which do not

comport with First Amendment standards.  These constitutional issues were previously litigated by this very Plaintiff and the Eighth Circuit rejected Plaintiff's claims.  Thus, the Court finds that Plaintiff's current claim that the Forest Service regulations are unconstitutionally overly broad and content-based are without merit and should be dismissed accordingly.

Count I of the Complaint does, however, raise First Amendment issues that were not previously litigated in <u>Nenninger</u>. Particularly, Plaintiff now argues that the Forest Service regulations violate the Free Exercise Clause.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." U.S. Const., Amdt. 1.  The "exercise of religion" often involves not only belief and profession, but also the performance of (or abstention from) physical acts, such as assembling with others for a worship service. <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, 494 U.S. 872, 877 (1990).

In <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, the Supreme Court held that the First Amendment's Free Exercise Clause does not bar application of a facially neutral law of general applicability to religiously motivated conduct. <u>Smith</u>, 494 U.S. 872 (1990); <u>In re Young</u>, 82 F.3d 1407, 1417 (8th Cir. 1996).  In so holding, the Court expressly rejected the application

-10-

of the compelling government interest and least restrictive means test previously set forth in cases such as <u>Sherbert v. Verner</u>, 374 U.S. 398 (1963), as unworkable and unnecessary in free exercise analysis. <u>Smith</u>, 494 U.S. at 855, 886-90.  Moreover, the Court held that the Constitution does not require judges to engage in a case-by-case assessment of the religious burdens imposed by facially neutral constitutional laws. <u>Id</u>. at 883-90.

Considering the Forest Service regulations challenged by Plaintiff under the Free Exercise analysis set forth by the Supreme Court in <u>Smith</u>, it is clear that these rules are valid.  As previously stated, the permit and signature requirements are facially neutral laws of general application.  This issue was previously litigated and decided in <u>Nenninger</u>.  Plaintiff has failed to plead or allege otherwise.  Plaintiff's First Amendment Free Exercise claim will, therefore, be dismissed.

(b) **The RFRA Claim** -- Count I also attacks the Forest Service regulations on RFRA grounds.  The RFRA prohibits the Federal Government from substantially burdening a person's exercise of religion, unless the Government demonstrates that such burden represents the least restrictive means of advancing a compelling interest. <u>In re Young</u>, 82 F.3d at 1418.[1]  Under the RFRA, plaintiffs have the initial burden of demonstrating that the policy

---

[1]      The RFRA restores the compelling government interest test rejected by the Supreme Court in <u>Smith</u>. <u>In re Young</u>, 82 F.3d at 1418.

-11-

in question substantially burdens the free exercise of their religion. That is, the threshold inquiry under the RFRA is whether the government action in question "substantially burdens" a person's religious practice. 42 U.S.C. 2000bb-1(a); In re Young, 82 F.3d at 1418. In order to be considered a "substantial" burden, the government action must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." Young, 82 F.3d at 1418 (quoting Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995)).

In the present case, it would appear that gathering en masse on National Forest lands for Fourth of July celebrations is a religiously motivated practice – but not one that is compelled.

It further appears that the Forest Services's permit and agent requirements do not prevent the Rainbow Family gatherings – in fact, these large gatherings have continued to occur after the implementation of the opposed regulations. Further, it appears to be obvious that Rainbow Family members have the option of gathering on private land if they do not wish to comply with the regulations' minimal requirements. Accordingly, the Court finds that the government's actions do not meaningfully curtail religious

practices in a way that is more than merely incidental.  <u>See</u> <u>id</u>. at 1418-19.  Therefore, the Court finds that Plaintiff has failed to plead or otherwise satisfy all the elements of his prima facie RFRA claim – namely, Plaintiff has not shown that the Forest Service requirements at issue substantially burden the practice of his religion.  Accordingly, Plaintiff's RFRA claim will be dismissed.

(c)   **<u>The Fifth Amendment Due Process Claim</u>** -- Plaintiff next attacks the Forest Service regulations based on Fifth Amendment due process and equal protection grounds.

Plaintiff's Fifth Amendment claim is, in essence, one of selective prosecution.  That is, Plaintiff argues that the constraints imposed by the equal protection component of the Due Process Clause have been violated because the Forest Service has, at prior Rainbow Family gatherings, waived the agent requirement while at other times enforcing it by issuing citations to Rainbow Family members for gathering en masse without the required permit.

The requirements for a selective prosecution claim draw on "ordinary equal protection standards." <u>United States v. Armstrong</u>, 517 U.S. 456, 466 (1996).  The claimant must demonstrate that the policy at issue "had a discriminatory effect and that it was motivated by a discriminatory purpose." <u>Id</u>.  This showing is necessary to overcome the presumption of regularity and proper motive afforded law enforcement officials. <u>Armstrong</u>, 517 U.S. at 465.  A plaintiff must present "clear evidence" that a decision to

prosecute was based on "an unjustifiable standard such as race, religion, or other arbitrary classification." Id. at 464-65 (citing Oyler v. Boles, 368 U.S. 448, 456 (1962)).

In the instant case, Plaintiff has failed to plead or otherwise establish the elements essential to his Fifth Amendment claim. Most significantly, there is no suggestion that the enforcement of the permit and agent requirements at Rainbow Family gatherings is motivated by race, religion, or some other impermissible classification. Rather, enforcement is based on content-neutral criteria – namely, the size of the gathering. Moreover, the government interests identified in the Forest Service regulations – i.e., protection of national forest resources, public health and safety concerns, and allocating space among competing uses – are, without question, content neutral. Thus, the Court finds that Plaintiff has failed to state a claim pursuant to the Fifth Amendment and, therefore, Defendants' motion to dismiss will be granted as to this constitutional claim.

(d) **The Civil rights Claims** -- Plaintiff further alleges that the Forest Service regulations violate certain civil rights codified at 42 U.S.C. §§ 1985, 1986, and 1988.

42 U.S.C. § 1985 creates, among other things, a cause of action for damages arising out of a conspiracy to deprive a person or class of persons of the equal protection of laws. See 42 U.S.C. § 1985(3). As the Court has herein held that Plaintiff's equal

protection claim should be dismissed for failure to state a claim, it follows that Plaintiff cannot sustain his Section 1985 claim.

42 U.S.C. § 1986 creates a cause of action against anyone who knows of a conspiracy under Section 1985 and who is in a position to prevent it, but does not. <u>See</u> 42 U.S.C. § 1986. As Plaintiff has failed to state a claim under Section 1985, it follows that he cannot maintain his Section 1986 claim.

Lastly, 42 U.S.C. § 1988 addresses the applicability of statutory and common law attorney's fees and expert fees, in the context of civil rights cases. <u>See</u> 42 U.S.C. § 1988. The facts, as set forth on the face of the complaint, do not support a cause of action under Section 1988.

For the foregoing reasons, the Court finds that Plaintiff's civil rights claims should be dismissed.

6. The Court will now consider Count II of the complaint, which focuses on Defendants' law enforcement activities in implementing and enforcing Forest Service regulations.

(a) **Plaintiff's State Law Claims Against the Government & Individual Defendants in their Official Capacities** -- As to Plaintiff's claims against Defendants Mark Rey, Ellen Hornstein, John Twiss, Officer Lampshire, and Officer Krogstad in their official capacity, it is axiomatic that such claims are, in essence, merely claims against their governmental employer. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (official-capacity suits "generally represent only another way of pleading an action

against an entity of which an officer is an agent."). Accordingly, Plaintiff's claims against the federal government include malicious prosecution, false arrest, assault, invasion of privacy, fraud under duress, and libel. These are torts claims for which only the Federal Tort Claims Act ("FTCA") can potentially provide a cause of action against the United States.

The United States is immune from suit unless it consents. Riley v. U.S., 486 F.3d 1030, 1032 (8th Cir. 2007). "Congress waived the sovereign immunity of the United States by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment." C.R.S. by D.B.S. v. United States, 11 F.3d 791, 795 (8th Cir. 1993). Under the FTCA, a claimant must present his "claim to the appropriate Federal agency" and the agency must make a final decision before the claimant may bring an action against the United States. 28 U.S.C. § 2675(a).

It is undisputed that, in the instant case, Plaintiff failed to file an administrative claim with the appropriate Federal agency prior to bringing suit against the United States. His tort claims against the United States and the individual Defendants in their official capacities are, therefore, subject to dismissal – as Plaintiff has failed to exhaust his administrative remedies and the Court lacks jurisdiction over these claims.

(b) **Claims Against Individual Defendants in their Personal Capacities** -- With respect to Plaintiff's state law tort claims against Defendants Twiss, Horstein, Lampshire, and Krogstad, in their personal capacities, Defendants argue that the United States is the proper party as to these claims.

Under the FTCA, the exclusive remedy for any state law tort committed by a federal employee within the scope of his official duties is a suit against the United States. 28 U.S.C. § 2679(b)(1). When a complaint alleges that a tort has been committed by a federal employee, the United States Attorney General may file a certification that the allegedly tortious act or omission was committed by the employee within the scope of his employment. 28 U.S.C. § 2679(d)(1). The Attorney General's decision regarding scope of employment certification is conclusive unless challenged. 28 U.S.C. § 2679(d)(1)-(4). Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant scope of employment certification. Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993).

In the instant case, the individual Defendants who are being sued in their personal capacities have been certified by the Attorney General as acting within the scope of their employment in enforcing Forest Service regulations. See Declaration of Robert C. Balfe, Doc. #40-2. Moreover, the Court finds that Plaintiff has not satisfied his burden of presenting evidence disproving the Attorney General's certification decision. Therefore, the United

-17-

States is the proper party with respect to Plaintiff's state law claims.  And, as previously discussed, Plaintiff's state law tort claims against the United States should be dismissed for failure to exhaust administrative remedies.  Accordingly, Defendants' motion to dismiss will be granted as to these claims.

Regarding Plaintiff's constitutional claims against Defendants Twiss, Hornstein, Lampshire, and Krogstad, in their individual capacities, Defendants' motion to dismiss argues that these Defendants are entitled to qualified immunity.  That doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987)(internal citations omitted).

Two inquiries are made when the Court considers an issue of qualified immunity.  First, considered in the light most favorable to the plaintiff, do the facts alleged show that the officer's

-18-

conduct violated a constitutional or statutory right?  If so, was that right clearly established at the time of the alleged violation?  Saucier v. Katz, 533 U.S. 194, 201 (2001).

In the instant case, Plaintiff alleges that the individual Defendants violated his constitutional rights in adopting and enforcing the Forest Service's permit and signature requirements, and the agency's vehicle checkpoint policies.  As previously stated, Plaintiff's claims against the constitutionality of the Forest Service regulations at issue are without merit and should be dismissed.  This is, then, clearly an instance where there are no cases of controlling authority which "clearly established the rule" on which Plaintiff seeks to rely, and there is no "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999).

Accordingly, the Court finds that Plaintiff has failed to allege that Defendants have violated any clearly established right.  See Siegert v. Gilley, 500 U.S. 226, 232 (1991).  Plaintiff has alleged only generalized constitutional violations in connection with the drafting and enforcement of certain Forest Service regulations, the implementation of checkpoints, and other law enforcement activities at the 2006 and 2007 Rainbow Family gatherings.  Clearly these Defendants had good reason to believe that the actions they took in connection with the permit and agent

requirements, and Forest Service regulations generally, were constitutional. Therefore, the Court finds that these Defendants are entitled to qualified immunity and the claims brought against them in their personal capacities will be dismissed accordingly.

7. Finally, the Court will address Plaintiff's request for injunctive relief. As a threshold matter, the Court must first consider the issue of Plaintiff's standing to seek the injunctive relief described in his complaint. See Arkansans Right to Life State Political Action Committee v. Butler, et al., 146 F.3d 558, 560 (8th Cir. 1998) (stating that standing is a threshold issue in every case and "[i]f a plaintiff lacks standing, he or she cannot invoke [a federal court's] jurisdiction). In order to invoke the jurisdiction of a federal court, one must have suffered an "injury in fact," and "such an injury must be concrete, particularized, and either actual or imminent." Boyle v. Anderson, 68 F.3d 1093, 1100-01 (8th Cir. 1995). Specifically, in the case of complaints for injunctive relief, the requisite "injury in fact" element of standing requires a showing that the plaintiff faces a real threat of ongoing or imminent harm. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-105 (1983). Vague, speculative, and conclusory allegations of harm or threatened harm are insufficient to create standing. See Butler, 146 F.3d at 560.

In the instant case, Plaintiff does not, nor can he, represent

Rainbow Family members who gather on National Forest lands.[2]  Thus, in order to establish standing, Plaintiff must show that the threatened harms alleged in his complaint are real and immediate, and that *he* himself is the subject of this impending harm.  While Plaintiff cites alleged past wrongs in the manner of previous illegal Fourth Amendment searches and seizures, and the Forest Service's improper implementation of the agent requirement, such past exposure to improper conduct does not convince the Court of the present likelihood that *Plaintiff* will again be subject to similar harm during future Rainbow Family gatherings.  The Court finds that such a threat to Plaintiff himself is, at best, speculative.  Accordingly, the Court finds that Plaintiff lacks standing to seek the injunctive relief requested in his complaint. Therefore, his request for injunctive relief will be dismissed for lack of jurisdiction.

**IT IS THEREFORE ORDERED** that Defendants' **Motion to Dismiss or, in the Alternative, for Summary Judgment** (document #40) is **granted,**

---

[2]

As previously noted by the Court in its Order of June 27, 2007, because Plaintiff is not licensed to practice law in the state of Arkansas, nor in any other state, he cannot represent other attendees of Rainbow gatherings.  Further, Plaintiff claims that the Rainbow Family consists of cooperative individuals who remain autonomous and free from organized, associated relationships.  Thus, in this sense, Plaintiff is also prohibited from representing Rainbow Family members – he states as much in his complaint.

and Plaintiff's claims against all Defendants are hereby **dismissed**

**with prejudice.**

IT IS SO ORDERED.

                                        **/s/ Jimm Larry Hendren**
                                        **JIMM LARRY HENDREN**
                                        **UNITED STATES DISTRICT JUDGE**